IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEBORAH C. HARGROVE,            )
                                )
        Plaintiff,              )
                                )
v.                              )        CASE NO. 2:15cv909-SRW
                                )
NANCY A. BERRYHILL,[1]          )
Acting Commissioner of Social Security,  )
                                )
        Defendant.              )

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Deborah C. Hargrove commenced this action on December 10, 2015, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner denying her application for disability and disability insurance benefits. *See* Doc. 1; Doc. 13; Doc. 14.  Plaintiff applied for benefits on September 30, 2013, and she alleged disability onset as of August 31, 2013 due to a brain tumor (removed), difficulty concentrating, and emotional and anger impairments. Doc. 15-2 at 21; Doc. 15-5 at 2; Doc. 15-6 at 6. On May 26, 2015, Administrative Law Judge Walter V. Lassiter, Jr. (the "ALJ") issued an adverse decision.[3] *See* Doc. 15-2 at 21-35. The Appeals Council denied plaintiff's

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. **The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.**

[2] For the purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time of the ALJ's decision and the filing of this appeal.

[3] Plaintiff was represented by counsel at the hearing before the ALJ. *See* Doc. 15-2 at 21.

request for review, and the ALJ's decision became the final decision of the Commissioner. *See id.* at 2-3.

In the instant appeal, the plaintiff requests that the court award the plaintiff benefits or, alternatively, remand this cause to the Commissioner under sentence four of § 405(g). *See* Doc. 13 at 15. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c). *See* Doc. 7, 8. For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be remanded.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## DISCUSSION

On appeal, the plaintiff argues that the ALJ erred because his RFC "was not rooted in the medical record," he misclassified the plaintiff's mental impairments as non-severe, and plaintiff cannot perform her past relevant work. *See* Doc. 13 at 7-17. The plaintiff also maintains that the ALJ improperly rejected the plaintiff's subjective testimony regarding the intensity and extent of her mental impairments, that the ALJ's decision misstates the record and is not based on substantial evidence, and that the ALJ impermissibly conducted

an adversarial proceeding.[4] The court holds that the ALJ's classification of the plaintiff's mental impairments was not based on substantial evidence, and the ALJ's credibility determination was not consistent with correct legal standards and is not based on substantial evidence. For these reasons, this cause is due to be remanded for additional proceedings. The court does not reach the merits of the plaintiff's remaining arguments.

## I.    Background

The plaintiff was gainfully employed from 1971 until the end of December 2013 – that is, approximately 42 years. Doc. 15-5 at 4-5. It is undisputed that, in late August 2013, the plaintiff fell and cut her head when she was tailgating and drinking a beer. Doc. 15-2 at 24. The plaintiff's husband took her to an emergency room. While she was there, the hospital ordered imaging tests of plaintiff's brain, and discovered that the plaintiff had a large brain tumor. *See* R. 239-55; 422-32. The plaintiff was transferred first from a hospital in Troy, Alabama, to Baptist Medical Center South in Montgomery, Alabama, for a neurological consultation and evaluation. Shortly thereafter, the plaintiff was sent to UAB Medical Center in Birmingham, Alabama, where she underwent brain surgery to remove the tumor in early September 2013. The plaintiff testified that her surgery took place four days after the fall. *See* Doc. 15-2 at 51.

After the surgery, the plaintiff experienced paralysis on her left side. *See* R. 286. For the remainder of 2013, plaintiff underwent rehabilitative therapy, and she regained significant use of her left side, but with ongoing complications. *See* R. 312-402. The

---

[4] "Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).

plaintiff's neurologist prohibited her from driving after her surgery, and she was cleared to drive again until March 2014. *See* Doc. 15-2 at 50.

The plaintiff testified, and there is medical evidence of record, that she also began experiencing mental impairments after the surgery, which included depression, anxiety, memory loss, and social dysfunction. *See*, *e.g.*, R. 42-81. Beginning in March 2013 – five months prior to her fall and brain tumor diagnosis and six months before she applied for benefits – the plaintiff was diagnosed with depressive disorder, and she was prescribed Lexapro and Nortriptyline. *See* R. 436-37. In November and December of 2013, the plaintiff sought treatment from her primary care medical sources, Dr. Peter M. CiChiara, M.D., and Jon Adams, PA-C, ATC, for short-term memory loss, decreased ability to concentrate, and a low frustration tolerance. *See* R. 448, 462-63. Her physician prescribed anti-depressant, anti-anxiety, and sleep medications. *See* R. 433-35, 500, 535-40. The plaintiff continued to experience mental impairments including depression and memory problems, and she saw a psychologist and, later, a licensed professional counselor beginning in February 2014. *See* R. 490-94, 549-69. She continued with counseling through the date of the administrative hearing in January 2015. *See* R. 54-55.

At the hearing before the ALJ on January 7, 2015, the plaintiff testified that she did not work from August 2013 until the end of December 2013, but she remained on the payroll because she was using accrued leave with pay. *See* Doc. 15-2 at 49-50. She further testified that her leave ran out in December 2013, and she did not return to work because she was not cleared to drive and her psychiatrist told her that she could not work. *See id.* at 50. As of the date of the hearing, plaintiff testified that she was not physically "100 percent

back," and that she could no longer work because of an ongoing mental impairment. *Id.* at 51-52. Plaintiff alleges a disability onset date that corresponds with the date on which she fell and learned of her brain tumor, and she testified that, in the Fall of 2013, she had hoped to return to work until December 2013, at which point she discovered new mental impairments that caused her to question her fitness to work. *See id.* at 53-54.

She retired at the end of 2013, and she has retirement income through the State of Alabama. Doc. 15-2 at 49-50. She incurred a substantial financial penalty by retiring in December 2013, and she would have earned access to tens of thousands of dollars in additional retirement funds had she worked for an additional year. *See* Doc. 15-2 at 61-64. The ALJ was curious as to why the plaintiff did not ask a family member, such as her retired husband, to drive her 30 miles each way from home to work or "take a cab" to avoid losing "a sizeable amount of money," to which the plaintiff responded that it would have been "financially hard" to arrange to be driven to work and that she "didn't feel like [she] could handle the job" because of "complications" after the brain tumor and surgery, including memory loss and emotional distress. Doc. 15-2 at 63-64, 68-70.

In his written decision, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 31, 2013. *See* Doc. 15-2 at 23. The ALJ determined that the plaintiff suffers from the severe impairments of "status post right-side craniotomy with excision of large right frontal meningioma and moderate osteoarthritis, left (non-dominant) shoulder." *Id.* As to non-severe physical impairments, the ALJ discusses plaintiff's history of carpal tunnel release, hyperthyroidism, thyroiditis, shortness of breath with tobacco use, mild joint space narrowing in the left knee, temporary

upper left extremity monoplegia and left lower hemiparesis secondary to brain surgery, and obesity. *See id.* at 23-24. The ALJ also found that the plaintiff had a history of alcohol abuse and mental impairments that were non-severe. *See id.* at 24-26.

The ALJ made the following RFC determination:

[T]he [plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The [plaintiff] can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The [plaintiff] can occasionally use her left upper extremity to reach overhead. She can frequently use her left upper extremity for pushing and pulling. The [plaintiff] can frequently use her left lower extremity to push, pull and operate foot controls. The [plaintiff] cannot climb ladders, ropes, poles or scaffolds. The [plaintiff] can occasionally climb ramps and stairs. The [plaintiff] can occasionally balance, stoop, kneel crouch, and crawl. The [plaintiff] can occasionally work in humidity, wetness, and extreme temperatures. The [plaintiff] cannot work at unprotected heights or with operating hazardous machinery. The [plaintiff] can occasionally operate motorized vehicles.

Doc. 15-2 at 2. Notably, the RFC contains no limitations with regard to plaintiff's mental impairments. At step four, the ALJ found that the plaintiff can perform her past relevant work as a finance officer and an administrative assistant. *See id.* at 33. The ALJ made alternative findings at step five, based in part on the testimony of a vocational expert, that the plaintiff can perform other jobs that exist in sufficient numbers in the national economy. *See id.* at 34-35. The ALJ's findings resulted in a determination that the plaintiff is "not disabled." *Id.* at 35.

The ALJ stated at the plaintiff's hearing that he would find the plaintiff to be disabled if he credited the medical source evidence of record. *See* Doc. 15-2 at 78.

Furthermore, the Vocational Expert testified that, if the ALJ credited the plaintiff's testimony regarding her limitations, her testimony "would preclude work." *Id.* at 79.

## II. The ALJ's findings as to plaintiff's non-severe impairments of alcohol abuse and various mental impairments are not based on substantial evidence or correct legal standards.

The ALJ's findings regarding the plaintiff's non-severe impairments of alcohol abuse and mental impairments are not supported by substantial evidence.

The ALJ found that "[t]he [plaintiff] also has a history of alcohol abuse, and the record actually indicates she was tailgating and drinking alcohol when she fell and suffered a head injury. Further, on at least one occasion, she reported a history of problems associated with drinking, including loss of consciousness." Doc. 15-2 at 24 (citing Doc. 15-7 at 30). The evidence that the ALJ relies upon to support his finding that the plaintiff has "a history of problems associated with drinking, including loss of consciousness" reflects that the plaintiff consumes "three to five beers per week," and that the plaintiff subjectively "associated" her periods of "blacking out" with drinking. Doc. 15-7 at 30. However, there is no evidence on the record that "three to five beers per week" would cause an adult to lose consciousness or that plaintiff reported or was found by any medical source to have a problem with alcohol abuse. The only explanation for the plaintiff's fall and loss of consciousness apparent in the administrative record was the presence of a large brain tumor. The ALJ's decision that the plaintiff has abused alcohol is pure conjecture.

Also, the ALJ found that the plaintiff's mental impairments of "major depressive disorder, recurrent, and adjustment disorder with mixed features of depression and anxiety" are non-severe. Doc. 15-2 at 24. The ALJ determined as a matter of fact that the plaintiff

"did not seek any mental health treatment until March 2014, despite there being no barriers to her pursuing such treatment prior to that time. In fact, she submitted her application for disability before ever attempting mental healthcare." *Id.* As discussed above, the plaintiff began receiving treatment for mental impairments in March 2013, and she continued with counseling and medication treatments through the date of her hearing before the ALJ. The ALJ's finding that she did not seek treatment until March 2014 misstates the record, is wholly conclusory, and is not based on substantial evidence.

The ALJ considered all of plaintiff's impairments, whether severe or non-severe, including findings that are not based upon substantial evidence. Doc. 15-2 at 24. There is a dispute on appeal as to whether the ALJ misclassified the plaintiff's mental impairments as non-severe; however, the Commissioner correctly argues that the ALJ satisfied the requirement of step two by finding that the plaintiff has severe impairments, and he is not required to identify all of the plaintiff's severe impairments to move to step three of the sequential process. In the Eleventh Circuit, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, because the ALJ found that the plaintiff has severe impairments and he considered the plaintiff's severe and non-severe impairments in conjunction, the classification of plaintiff's mental impairments as non-severe, if erroneous, is harmless.[5]

---

[5] The ALJ is required to consider the plaintiff's severe and non-severe impairments collectively. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) ("Where a claimant has alleged

That said, the findings made by the ALJ regarding existence of a history of alcohol abuse and the severity of the plaintiff's mental impairments are not based on substantial evidence and, in some instances, are not premised on an accurate representation of the evidence in the administrative record. "An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches." *Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1173 (N.D. Ala. 2006). Accordingly, the ALJ's findings are not in conformity with correct legal standards. Remand for additional consideration is required. *See Cornelius*, 936 F.2d 1143, 1145-46 (a district court must reverse when correct legal standards were not applied by the Commissioner).

### III.    The ALJ's Credibility Determinations

The ALJ found that the plaintiff's subjective complaints about the severity and persistence of her symptoms of mental impairments were manufactured and lacked credibility. *See* Doc. 15-2 at 25. Social Security Ruling 96–7p provides, in part, that:

> [w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on

---

several impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled."). The ALJ's written decision demonstrates that the ALJ satisfied this requirement. *See* Doc. 14-2 at 25-42.

credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96–7p, 1996 WL 374186, *4 (Jul. 2, 1996).

To demonstrate that pain renders her disabled, plaintiff must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)); *see also Holt*, 921 F.2d at 1223. If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons" that are based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F. 2d 1050, 1054 (11th Cir. 1986)).

The ALJ did not correctly apply these legal principles in this case. Also, the ALJ's findings of fact and discrediting of plaintiff's statements, reports, and testimony are not based on substantial evidence. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). The following discussion is not a comprehensive analysis of the ALJ's errors as to plaintiff's credibility determination;

instead, it highlights only the most noteworthy examples of a credibility determination that is not based on proper legal standards or substantial evidence, but is instead based upon a lack of evidence or a misrepresentation of the evidence.

For example, the ALJ found that the plaintiff has no limitations in social functioning. *See* Doc. 15-2 at 24. In so doing, the ALJ rejected the plaintiff's testimony about her social limitations and, generally, any medical evidence that conflicted with his finding. *See id.* at 25. The ALJ wrote that

> the [plaintiff] reported that she has difficulty interacting with others. The [ALJ] finds these reports suspect at best. The [plaintiff] underwent a traumatic event regarding a fall with resulting injury. At that time, she was in fact socializing – tailgating – and per her reports, consuming alcohol, when she had a fall that required surgery thereafter …. There was no objective evidence of residuals – mental or physical – such that she would be unable to return to her past relevant work. Nonetheless, in conjunction with her application, she appears to have created symptoms.

*Id.* The ALJ is correct that plaintiff was consuming alcohol and tailgating on the date of her fall, but there is no evidence actually linking her fall to her consumption of alcohol. Rather, the entirety of the medical evidence concerning the fall and subsequent surgery is that the plaintiff had a large brain tumor that required immediate surgery. The plaintiff's complaints of inability to socialize with people outside of her immediate family did not begin until after the surgery. *E.g.*, R. 62-63, 433-37.

As another example, in three instances the ALJ describes his review of the medical records regarding plaintiff's social functioning and concentration, persistence and pace as "cursory." Doc. 15-2 at 25. He also chides the plaintiff for "uneven presentations [that] have resulted in uneven reports," and he implicitly accuses the plaintiff of attempting to

perpetrate a fraud on the Commissioner by providing one set of information to medical care providers in seeking "medical care" and another set of information in "pursuit of her application." Doc. 15-2 at 25. However, the ALJ does not specify what "uneven presentations" led him to these conclusions.

Another noteworthy example of the lack of evidentiary support for the ALJ's adverse credibility determination is the ALJ's inaccurate paraphrasing of a function report completed by the plaintiff in October 2013, approximately two months after her fall and brain surgery. The ALJ's summary of the function report states, in relevant part,

> the [plaintiff] reported activities of daily living including preparing some meals with her husband's help, going to therapy appointments, taking naps, watching television, and doing laundry with her husband's help. She essentially reported that she requires help with her personal needs, cooking, and doing chores, such as laundry, and is no longer able to drive. However, she reported she shops for groceries and clothes in stores once or twice per week for a couple of hours; manages their finances; watches her grandchildren play sports about two or three times per week; and plays golf and cards weekly.

Doc 15-2 at 27 (internal citations to Doc. 15-6 a 36-44 omitted). The plaintiff did not report that she "manages their finances." Instead, the plaintiff checked a box marked "yes" to the questions, "Are you able to pay bills, count change, handle a checking account, [and] use a checkbook / money orders?" Doc. 15-6 at 39. The plaintiff also did not report that she manages her family's finances. An ability to pay bills, count change, handle a checking account, and use a checkbook or money order is not evidence that she actually does those things for herself or her family. Also, the plaintiff stated that, *prior* to her surgery, she watched her grandchildren play sports, played golf, and played cards. *See id.* at 40. The

plaintiff further explained that, after her surgery, she was no longer able to do those things due to a fear of falling, inability to swing a golf club, and because she "can't stand group settings for cards [because of] too much noise." *Id*. The ALJ's findings concerning this function report are not based on substantial evidence or an accurate representation of the exhibit.

Elsewhere, in recounting his basis for rejecting the plaintiff's credibility, the ALJ writes that "in September 2014, [plaintiff] denied ever using alcohol[.]" Doc. 15-2 at 30 (citing Doc. 15-9 at 119). In support of that finding, the ALJ relies on progress treatment notes completed by Dr. Brian Weithop, M.D. on September 16, 2014. *See* Doc. 15-9 at 119. Dr. Weithop's notes read, in total, "Alcohol (Never)." *Id.* The problem with the ALJ's finding that the plaintiff denied ever using alcohol is that it requires inferential leaps that lack evidentiary support. Dr. Weithop's note does not say that the plaintiff denied consuming alcohol at any point in her life, or indeed that the plaintiff told Dr. Weithop anything whatsoever about alcohol consumption. The source of that information is not evident from the treatment notes. Further, the notation "Alcohol (Never)" could as easily be read to mean that the plaintiff "never" consumes alcohol as of the September 16, 2014 office visit as it could be understood to state that the plaintiff has never consumed alcohol at all. In sum, there is no indication in Dr. Weithop's treatment note that plaintiff supplied the information for the notation "Alcohol (Never)" or what that notation means. Absent additional explanation by Dr. Weithop or the plaintiff on the record, the ALJ's finding that the plaintiff "gave varying accounts of ongoing … alcohol use to her treating providers,"

and that in September 2014 she denied ever using alcohol, are not based on substantial evidence. Doc. 15-2 at 30.

Similarly, the ALJ determines that the plaintiff can perform work based on his finding that "the fact that her treating primary care provider recommended she increase her exercise level is inconsistent with a finding that the [plaintiff's] functional capacity is so impaired as to render her incapable of performing any substantial gainful activity." Doc. 15-2 at 31 (citing Doc. 15-6 at 139). Again, this finding overstates the treating physician's treatment notes. The notes say, "discussed BMI, weight loss, and exercise," and indicate that the plaintiff "will try diet and exercise." Doc. 15-6 at 139. There is no explanation in these treatment notes as to the type or extent of the exercise discussed with the plaintiff. Based on the single page cited by the ALJ, the plaintiff could have agreed to try walking 10 minutes per day for exercise or to running a half marathon. Without context and explanation in the treatment notes or elsewhere in the record, the ALJ's finding that the plaintiff's treating physician's instruction to her to increase her exercise level[6] mitigates against a determination that she cannot work is speculative and not based on substantial evidence. *Id.*

The ALJ further found that the plaintiff's credibility is undermined because "[h]er treating provider declined to complete the disability paperwork and told her to see a disability doctor. While this is not an opinion as to the [plaintiff's] ability to work, when coupled with the physical examination and the assessment, it suggests her treating primary

---

[6] This actually is not what the treatment note indicates; the note only records that the doctor "discussed" exercise with the plaintiff. Doc. 15-6 at 139.

care provider did not think she was disabled." Doc. 15-2 at 31. This finding is wholly speculative. In November 2014, plaintiff saw her treating physician for a number of reasons: (1) to have paperwork completed related to her disability application as her initial application was denied and she was set for a hearing before the ALJ; (2) to report that her memory was "getting worse"; and (3) "to have fasting lab work" related to the management of hyperlipidemia. Doc. 15-9 at 134. The ALJ neglects to mention that the plaintiff was scheduled to have fasting lab work performed by her treating physician in November 2014 in condemning plaintiff's choice to seek medical records from her treating physician – medical evidence that she is required to provide to the Commissioner in support of her disability application. *See Ellison*, 355 F.3d at 1276 (a plaintiff bears the burden of proving disability).

In addition, the treating physician's notes report only that "we cannot do that [the disability paperwork] here," state that plaintiff will need to see a "disability doctor," and indicate that his office will supply the plaintiff with assistance in finding a disability doctor. Doc. 15-9 at 136. The absence of an opinion from a medical source is not the same as an adverse opinion, as the ALJ improperly concludes. The plaintiff's treating physician did not "suggest" that he "did not think [plaintiff] was disabled," as the ALJ finds. Doc. 15-2 at 31; Doc. 15-9 at 136. To the contrary, the treating physician made no findings at all; the treatment note simply states that his office "cannot" complete the form, without offering any reason. Doc. 15-9 at 136. The ALJ's speculation that the plaintiff's treating physician may have been reluctant to provide disability paperwork because he did not think that the

plaintiff is disabled not only lacks substantial evidentiary support, it is based on no evidence at all.

Finally, the ALJ doubts the plaintiff's credibility because she stopped working a year prior to her eligible retirement date, but he does not explain how the plaintiff's plan to retire roughly a year after she quit her job in December 2013 undercuts her credibility. *See* Doc. 15-2 at 33 ("It is also instructive that the [plaintiff] reported plans to retire to at least one treating provider ...."). It is not obvious why the plaintiff's plan to retire at the age of 58 after being gainfully employed from 1971 until the end of 2013 diminishes her credibility regarding the severity of her symptoms. There is not substantial evidence to support that conclusion. To the contrary, there is evidence that the plaintiff's early retirement caused her a financial loss – which would tend, if anything, to support a determination that she stopped working because of disability. The plaintiff testified that, because she could not return to work in December 2013, she lost a large sum of money equal to tens of thousands of dollars from a retirement benefit account to which she had contributed. *See* Doc. 15-2 at 61-62.

In addition to determining that the plaintiff's testimony lacks credibility, the ALJ accorded her husband's testimony about her limitations "little weight" primarily because her husband's testimony was "consistent with the [plaintiff's] reports." Doc. 15-2 at 33. Because the ALJ's credibility determination about the plaintiff's subjective testimony is not based on substantial evidence, a finding that her husband's credibility is undercut by its consistency with the plaintiff's subjective evidence also is not based on substantial evidence.

As discussed above,

"The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing "'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.'" *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983) (quoting *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's factfinding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler*, 748 F.2d 1511 (11th Cir. 1984).

*King v. Barnhart*, 320 F. Supp. 2d 1227, 1232–33 (N.D. Ala. 2004).

This court has carefully examined every citation to the record in the ALJ's written opinion, as well as the record as a whole. As noted above, the court does not reweigh the evidence; instead it reviews the record to determine whether each of the ALJ's findings is based on substantial evidence. Having done so, the court concludes that the ALJ's findings regarding the plaintiff's credibility are not reasonable and not based on substantial evidence. *See Bloodsworth*, 703 F.2d at 1239 (A court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]. Even if [the court] find[s] that the evidence preponderates against the [Commissioner's] decision,

[it] must affirm if the decision is supported by substantial evidence."). The findings offered by the ALJ to support his credibility determination with respect to the plaintiff's subjective statements appear to be premised upon an incomplete or incorrect assessment of the evidence. *See Hale v. Bowen*, 831 F.2d at 1011.

Moreover, with the exception of Dr. King's physical assessment opinion of the plaintiff, the ALJ rejected all medical source opinions and findings regarding the plaintiff's mental impairments in whole or in part because he found that the plaintiff's subjective complaints lacked credibility. Thus, the ALJ's assessment of the medical evidence and medical source opinions are not based on substantial evidence and must be re-examined on remand.[7]

## CONCLUSION AND ORDER

Accordingly, for the reasons discussed, the decision of the Commissioner will be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that the Commissioner can conduct additional proceedings consistent

---

[7] Recently, this court reaffirmed that

"the ALJ is not a physician, and he is not empowered to form medical opinions or recommend treatments." *Coker v. Colvin*, 2016 WL 7159498, at *6 (M.D. Ala. Dec. 7, 2016) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring) ("An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians[.]")). In other words, "an ALJ cannot act as both judge and physician." *Id.* at *9 (citing *Marbury*, 957 F.2d at 840-41).

*REGINA BEASLEY, Plaintiff, v. NANCY A. BERRYHILL, Acting Comm'r of Soc. Sec., Defendant*, 2017 WL 4172953, at *4 (M.D. Ala. Sept. 20, 2017). Also, late last year, this court held that the ALJ assigned to this case improperly acted as both physician and adjudicator in another case that presents remarkably similar issues to the instant action. *See Coker v. Colvin*, No. 2:15CV436-SRW, 2016 WL 7159498, at *9 (M.D. Ala. Dec. 7, 2016). The court does not reach this issue here, and trusts that the ALJ will be mindful of the need to rely on accurate representations of the medical evidence.

with this opinion. The court does not reach plaintiff's arguments that are not expressly discussed herein. The court expects that the Commissioner will consider plaintiff's arguments as to those issues on remand as well, and will develop the record as is necessary in areas not expressly considered in this opinion.

DONE, on this the 29th day of September, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge